## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C.; and CHESAPEAKE OPERATING, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-13-1118-M |
| CAMERON INTERNATIONAL CORPORATION, | ) ) ) ) | |
| Defendant/Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| PUMPCO ENERGY SERVICES, INC., | ) ) | |
| Third-Party Defendant. | ) | |

## ORDER

Before the Court is Third Party Defendant Pumpco Energy Services, Inc.'s ("Pumpco") Motion to Dismiss Third-Party Complaint of Cameron International Corporation ("Cameron") and Brief in Support, filed September 2, 2014. On September 23, 2014, Cameron responded; on September 30, 2014, Pumpco replied, and on October 28, 2014, Cameron filed its Sur-Reply. Based on the parties' submissions, the Court makes its determination.

I.  Background

Plaintiffs Chesapeake Appalachia, L.L.C. and Chesapeake Operating, Inc. ("Chesapeake") filed this instant action on April 16, 2013, in the District Court of Oklahoma County, State of Oklahoma. On October 18, 2013, Cameron removed this action to this Court. On August 12, 2014, Cameron filed a Third-Party Complaint alleging that Pumpco's negligent acts proximately caused the damage claimed by Chesapeake.

This action stems from an alleged loss of control at Chesapeake's ATGAS 2H well site ("2H Well") during hydraulic fracturing operations on April 19, 2011. Cameron alleges that Chesapeake hired and relied upon Pumpco to conduct the hydraulic fracturing operations at the 2H Well and that Pumpco was conducting fracturing operations at the time the alleged loss of control occurred. Cameron specifically alleges that:

> 9. During the fracturing operations, Pumpco experienced problems and was apparently unable to maintain a constant, steady flow of fracturing fluids through the well head[1] into the well bore and reservoir at the desired pressures and rates. Pumpco knew that it was experiencing problems during its fracturing operations, but continued with fracturing process rather than shutting the operation down as a reasonable and prudent completions contractor would, and should, have done.
>
> 10. Pumpco's operations moved, shook, vibrated, rocked, swayed, tilted and/or torqued the well head, causing the flange at the bottom to experience loads and stresses in excess of the tolerances specified by the American Petroleum Institute ("API") for this connection. Pumpco's operations separated the flange, allowed fracturing fluids to escape from the well bore and caused Chesapeake's alleged damages.

Third-Party Compl. ¶¶ 9 & 10.

Cameron alleges that "to the extent the flange separation is found to constitute any breach of duty owed to Chesapeake, whether in the form of negligence, products liability, strict liability, or a breach of contract, then Pumpco caused that breach and the resulting damages." *Id.* ¶ 14. As a result, "Cameron seeks contribution, indemnity, and recovery from Pumpco for any alleged

---

[1] In their Complaint, Chesapeake allege that Cameron provided the well head. "A wellhead is the system of flanges, spools, valves, and assorted adapters at the surface of a gas well that, among other things, help control the pressure of a well." *See* Chesapeake's Complaint [docket 1-2].

liability to Chesapeake that arises from or relates to the loss of control of the Atgas 2H well that occurred during Pumpco's fracturing operations . . . ." *Id*. ¶ 15.

Pumpco now moves the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Cameron's claims of contribution and indemnity for failure to state a claim upon which relief can be granted.

II.    Standard for Dismissal

Regarding the standard for determining whether to dismiss a claim pursuant to Rule 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 1949 (internal quotations and citations omitted).

3

III. Discussion

   A. Indemnity

Pumpco asserts that Cameron has failed to state a plausible claim for indemnity. Specifically, Pumpco contends that Cameron has not alleged that an express contract of indemnity or statutory right of indemnity exists between the two parties and that Cameron has failed to state a plausible claim for implied or non-contractual indemnity. Cameron asserts that it has alleged a claim for both statutory and implied indemnity.

"The general rule of indemnity is that one without fault, who is forced to pay on behalf of another, is entitled to indemnification." *Nat'l Union Fire Ins. Co. v. A.A.R. West. Skyways, Inc.*, 784 P.2d 52, 54 (Okla. 1989). "Noncontractual or equitable indemnity is similar to common-law contribution; one who is only constructively or vicariously obligated to pay damages of another's tortious conduct may recover the sum paid from the tortfeasor." *Id.* (internal citation omitted). "However, Oklahoma case law has always premised this right of indemnity on the understanding that a legal relationship exists between the parties." *Id.* Further,

> In the case of concurrent or joint tortfeasors, having no legal relations to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other.

*Id.* at 55. Okla. Stat. tit. 12, § 832.1(A), which codifies the common law principle of implied indemnity, states:

> A manufacturer shall indemnify and hold harmless a seller against loss arising out of a product liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

4

Okla. Stat. tit. 12, § 832.1(A).

Cameron contends that "Pumpco designed, manufactured, and installed the hydraulic fracturing system alleged to have failed at the well, whereas Cameron merely sold/distributed component parts of the system." Cameron's Resp. at 8. As a result, Cameron contends that "Pumpco as the manufacturer owes a legal duty to Cameron, the component part supplier." *Id*. at 9. Cameron further contends that "a manufacturer of a product is not responsible if the modifications or alterations are responsible for the defect and is the intervening and superseding cause of the injuries." *Id*. at 10 (citing *Dutcsh v. Sea Ray Boats, Inc.,* 845 P.2d 187, 191 (Okla. 1992)). Pumpco asserts that Cameron has failed to allege that the parties are in the same chain of distribution for the same product, therefore, no legal relationship exists between the two parties. Further, Pumpco contends that if Cameron's allegations that Pumpco's actions of modifying or altering the well head relieved Cameron of liability to Chesapeake were true, then there would be no basis for holding Pumpco vicariously liable under implied indemnity or indemnity under Okla. Stat. tit. 12, § 832.1.

Having carefully reviewed Cameron's Third-Party Complaint and presuming all of Cameron's factual allegations are true and construing them in the light most favorable to Cameron, the Court finds that Cameron has failed to allege that a legal relationship exists between Cameron and Pumpco that would require Pumpco to indemnify Cameron for any alleged liability to Chesapeake. Cameron alleges that:

> 12. The well head installed on the Atags 2H well successfully contained the pressure in the well bore throughout all operations up until the time Pumpco integrated the well head into its pumping system and attempted to hydraulically fracture the well. Pumpco changed, altered, and modified the equipment in the well head from its original configuration assembly.

5

> 13. Pumpco's fracturing operations misused and abused the equipment in the well head at the Atgas 2H well site, causing the flange at the bottom to experience forces in excess of API specifications and tolerances. Pumpco is responsible to Chesapeake for the defects alleged to exist in the well head because the flange would not have separated but for Pumpco's acts and omissions during the fracturing operations.

Third-Party Compl. ¶¶ 12 & 13. The Court finds that based on Cameron's allegations against Pumpco, Cameron is alleging that Pumpco's hydraulic fracturing operations is what caused the loss of control at the 2H Well, not Cameron's well head. The Court finds that while the well head was intergraded into the hydraulic fracturing operations system, the well head and the hydraulic fracturing system were two separate products provided by two separate independent parties. For Pumpco to be responsible to Cameron for indemnification, Pumpco would have to have manufactured the well head and supplied it to Cameron, who in turn supplied it to Chesapeake. In this instance, that was not the case and, therefore, since Pumpco neither manufactured nor supplied Cameron with the well head, no legal relationship exists between the two parties. Further, presuming Cameron's allegation that Pumpco's alleged act of modifying or altering the well head relieved Cameron of liability to Chesapeake, the Court finds there would be no basis for Pumpco to indemnify Cameron. As a result, Cameron is not entitled to indemnification from Pumpco for any alleged liability to Chesapeake that arises from or relates to the loss of control of the 2H Well.

B. Contribution

Pumpco asserts that Cameron has also failed to state a plausible claim for contribution. Specifically, Pumpco contends that "Cameron does not allege that it and Pumpco are both liable to Chesapeake. Instead Cameron alleges that Chesapeake's alleged injuries were caused by

Pumpco." Mot. to Dis. at 6. Cameron asserts that it can deny liability to Chesapeake while alternatively pleading a contribution claim against Pumpco.

"In any civil action based on fault and not arising out of contract, the liability for damages caused by two or more persons shall be several only and a joint tortfeasor shall be liable only for the amount of damages allocated to that tortfeasor." Okla. Stat. tit. 23, § 15(A). "The right of contribution exists only in favor of a tort-feasor who has paid more than their pro rata share of the common liability, and the total recovery is limited to the amount paid by the tort-feasor in excess of their pro rata share. No tort-feasor is compelled to make contribution beyond their pro rata share of the entire liability." Okla. Stat. tit. 12, § 832. "For a person to seek contribution under the Uniform Contribution Among Tortfeasors Act, 12 O.S.1981 § 832, the parties must be jointly or severally liable. An allegation that the party against whom contribution is sought is solely liable to the plaintiff, or that the party seeking contribution is not liable at all, is insufficient." *Daugherty v. Farmers Co-op. Ass'n*, 790 P.2d 1118, 1120-21 (Okla. 1989).

Having carefully reviewed Cameron's Third-Party Complaint and presuming all of Cameron's factual allegations are true and construing them in the light most favorable to Cameron, the Court finds that Cameron has failed to allege that Cameron and Pumpco are jointly or severally liable to Chesapeake for the loss of control at the 2H Well. In its Response, Cameron asserts that "should it be held responsible to Chesapeake for <u>Pumpco's conduct</u>, then Pumpco bears responsibility to Cameron for this amount. Cameron's Contribution claim is over and above Cameron's liability, if any and focuses on Pumpco's pro rata share of responsibility that Cameron may be required to bear." Cameron's Resp. at 6. However, the Court finds that Cameron alleges the following:

> 16. To the extent that Chesapeake suffered any cognizable or recoverable damages as a result of the loss of control at the

> Atgas 2H well site on or about April 19, 2011, Pumpco is responsible for those damages.
>
> 17. Cameron seeks contribution, indemnity, and recovery from Pumpco for **all alleged damages** that a judge or jury might possibly award to Chesapeake, if any, that arise from or relate to the loss of control at the Atgas 2H well that occurred on or about April 19, 2011.

Third-Party Compl. ¶¶ 16 and 17 (emphasis added). Further, Cameron concludes by requesting "the Court award all damages and recovery to Cameron from Pumpco as may be allowed by law, and the Court award Cameron all other relief to which it may be justly entitled." *Id*. at 5. In its response, Cameron asserts that it is only seeking Pumpco's pro rata share of responsibility if Cameron is found liable to Chesapeake. However, a review of Cameron's Third-Party Complaint reveals that, while Cameron concludes by asking the Court to "award all damages and recovery to Cameron from Pumpco as may be allowed by law", the body of Cameron's Third-Party Complaint seems to hold Pumpco solely responsible for the loss of control at the 2H well. As a result, Cameron's Third-Party Complaint fails to allege that both Pumpco and Cameron are jointly or severally liable to Chesapeake requiring contribution.

IV. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS Third Party Defendant Pumpco Energy Services, Inc.'s Motion to Dismiss Third-Party Complaint of Cameron International Corporation and Brief in Support [docket no. 23] and DISMISSES Cameron's contribution and indemnity claims without prejudice.

**IT IS SO ORDERED this 16th day of December, 2014.**

*[signature]*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE