# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. and CHESAPEAKE OPERATING, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. CIV-13-1118-M ) |
| CAMERON INTERNATIONAL CORPORATION, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is plaintiffs Chesapeake Appalachia, L.L.C. and Chesapeake Operating, Inc.'s ("Chesapeake") Motion to Compel Production of Documents and Interrogatory Responses, filed October 28, 2015. On November 16, 2015, defendant Cameron International Corporation ("Cameron") filed its response, and on November 23, 2015, Chesapeake filed its reply. Based upon the parties' submissions, the Court makes its determination.

I. Background

This action arises from an April 19, 2011 incident at the ATGAS 2H Well near Leroy, Pennsylvania, where the wellhead and Frac Stack failed allowing a release of fluids. Cameron delivered, installed, and operated the wellhead and Frac Stack at the ATGAS 2H Well. Chesapeake seeks relief for the harm caused by the failure of the wellhead and Frac Stack.

Chesapeake served its First Set of Requests for Production and First Set of Interrogatories on April 6, 2015. Cameron served its responses and objections to Chesapeake's discovery requests on May 22, 2015. Chesapeake assert that Cameron's responses are deficient and move this Court to enter an order compelling Cameron to provide complete interrogatory responses and to produce documents requested. Specifically, Chesapeake asserts that Cameron has refused to provide the

information that Chesapeake requested in Requests for Production Nos. 3, 4, 6, 8, 9, 11, 12, 13, and 14 and Interrogatories Nos. 1, 3, 5, 10, 11, and 13.

II.     Discussion

Federal Rule of Civil Procedure 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

A.      Emails

Chesapeake asserts that Cameron has failed to undertake reasonable searches in response to Chesapeake's requests and has produced virtually no electronic communications (emails) related to the incident. Chesapeake requests the Court to order Cameron to conduct a good faith search of all of its electronic files, including emails, and to turn over any document responsive to Chesapeake's discovery requests. Chesapeake further requests the Court to compel Cameron to disclose its search methodology to ensure that Cameron is complying with its discovery obligations.

In response, Cameron contends that the Court should not rule on, or compel, discovery in response to a general complaint that is not tied to any proper discovery request. Cameron further contends that the Court should review the plain wording of the requests and determine the relevant and responsive scope (if any) for each one. Finally, Cameron contends that it has searched for, and

produced, the physical and electronic documents, including email, that properly respond to Chesapeake's discovery requests.

Having carefully reviewed the parties' submissions, the Court finds that the most appropriate and efficient method of addressing Chesapeake's concern regarding Cameron's production of emails is for the Court to rule on the specific discovery requests at issue in Chesapeake's motion to compel so that the scope of the discovery requests, and Cameron's obligation to respond to those requests, is clear. If further production is required to a discovery request, Cameron is reminded of its obligation to produce electronically stored information. Finally, if after any additional documents, paper or electronic, are produced, Chesapeake is still concerned about the appropriateness of Cameron's search, Chesapeake may file a separate motion addressing this issue.

  B. <u>Information Regarding Defendant's Products, Including the Sale, Delivery, and Installation of Its Products</u>

Chesapeake sought discovery regarding the sale, delivery, and installation and manufacture of the wellhead and Frac Stack through requests for production nos. 3, 6, and 7. The following are Chesapeake's requests and Cameron's responses:

> REQUEST FOR PRODUCTION NO. 3: Produce any and all documents that describe, summarize, set forth, detail, or relate to the sale or rental of the Cameron wellhead and Frac Stack at the ATGAS 2H Well, including but not limited to the Cameron sales order acknowledgement forms for the ATGAS 2H Well and Cameron's terms and conditions.
>
> RESPONSE: Cameron will produce the sales order acknowledgements and field service tickets in its possession for the equipment installed at the Atgas 2H Well.
>
> REQUEST FOR PRODUCTION NO. 6: Produce any and all documents that describe, summarize, set forth, detail, or relate to the delivery of the Cameron wellhead and Frac Stack to the ATGAS 2H Well.

RESPONSE: See the response to request number 3. Cameron will produce the field service tickets and sales order acknowledgement forms in its possession for the equipment delivered to the Atgas 2H Well.

REQUEST FOR PRODUCTION NO. 7: Produce any and all documents that describe, summarize, set forth, detail, or relate to the installation of the Cameron wellhead and Frac Stack at the ATGAS 2H Well, including but not limited to any instructions, policies, and procedures.

RESPONSE: Objection. Cameron objects to the instruction to produce "any and all documents that describe, summarize, set forth, detail, or relate to" the installation of equipment at the Atgas 2H Well. This series of instructions makes this request overly broad, unduly burdensome, and overly subjective or vague.
Subject to and without waiving these objections, Cameron will produce the running procedures for Chesapeake well heads and frac stacks used in the Marcellus Shale. See also the field service tickets produced in response to prior requests.

In relation to requests for production nos. 3 and 6, Chesapeake asserts that although Cameron has stated that it has produced the documents it could reasonably locate in response to this request, Cameron has not produced a single email that relates to the sale of the wellhead and Frac Stack and has produced no internal documents related to the sale of the wellhead and Frac Stack. In relation to request for production no. 7, Chesapeake asserts that Cameron unilaterally and improperly limited its production to the "running procedures"[1] and also referenced the field service tickets previously produced and produces no other documents related to the installation of the wellhead and Frac Stack. Chesapeake contends that it has good reason to believe that additional responsive documents exists. Specifically, Chesapeake references Cameron's publicly available brochures and states that Chesapeake has produced emails with Cameron discussing Cameron's records of Chesapeake's

---

[1] Chesapeake further asserts that the version of the "running procedures" that Cameron produced actually post-dates the Cameron wellhead failure at the ATGAS 2H Well.

purchases and rentals. Further, in relation to the request for documents relating to installation, Chesapeake states that it has advised Cameron that this request encompasses standard operating procedures, training procedures, and other documents explaining who is qualified to install the equipment and Cameron does not dispute that such documents exist. Chesapeake also asserts that these training procedures and certifications are relevant to this litigation.

Cameron asserts that it has properly and fully responded to Requests Nos. 3 and 6 as it has produced the sales order acknowledgements and field service tickets in its possession for the equipment, the contracts that governed the rental and sale of the equipment, and the terms and conditions typically governing the rental of the equipment. Cameron further asserts that it has properly responded to Request No. 7 as it has produced the documents for the installation of the wellhead at the ATGAS 2H Well, the running procedures that Chesapeake required for Cameron wellheads used in the Marcellus Shale region, and the wellhead and wellhead component testing procedures.

In its reply, Chesapeake contends that Cameron is impermissibly narrowing Chesapeake's requests. Chesapeake asserts that the requests for production also encompass internal documents related to the sale, delivery, or installation of the wellhead and Frac Stack. Chesapeake asserts that it knows such documents exist because it has produced emails with Cameron discussing Cameron's records of Chesapeake's purchases and rentals. Further, Chesapeake contends that its request no. 7 does encompass certifications, standard operating procedures, training procedures, and other documents explaining who is qualified to install its equipment.

Having carefully reviewed the parties' submissions, the Court finds that requests for production nos. 3 and 6 do encompass internal documents related to the sale, delivery, or installation

of the wellhead and Frac Stack and that Cameron should be compelled to produce these internal documents, to the extent any such documents exist. The Court further finds that request for production no. 7 is broad enough to encompass standard operating procedures, training procedures, and other documents explaining who is qualified to install its equipment. The Court finds that this information is relevant to the claims in this case and that Cameron should be compelled to produce these documents.

    C.    <u>Information Regarding the Manufacture of Cameron's Allegedly Defective Products</u>

Chesapeake sought discovery regarding the manufacture of Cameron's allegedly defective products through requests for production nos. 4, 8 and 9 and interrogatory no. 10. The following are Chesapeake's requests/interrogatory and Cameron's responses/answer:

> REQUEST FOR PRODUCTION NO. 4: Produce any and all documents that describe, summarize, set forth, detail, or relate to the manufacture of the Cameron wellhead and Frac Stack at the ATGAS 2H Well.
>
> RESPONSE: Objection. Cameron objects to this request as it is overly broad and unduly burdensome. The wellhead and frac stack are comprised of multiple valve assemblies. In order to produce "any and all documents" that relate to any part of the component parts of the valve assemblies during their multi-stage manufacturing processes before being assembled into the final component assembly is overly broad and unduly burdensome. This request requires Cameron to search for and produce documents across multiple manufacturing facilities in multiple states before the point that the components reach a final assembly level.
>
>     Additionally, Cameron objects to this request because it demands the production of documents for parts and pieces of the well head and frac stack that are not alleged to possess any defect. Chesapeake and Pumpco lost control of the well at the flange between the tubing spool and lower master valve. Chesapeake has refused to identify the parts upon which it rests its defect claims, but the facts of its claim make clear that no other portions of the frac stack or well head possessed a material defect. Consequently, this

6

request seeks documents that are neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waving these objections, Cameron will produce the router documents identifying the steps in the top level manufacture and assembly of the valves in the well head and frac stack.

REQUEST FOR PRODUCTION NO. 8: Produce any and all documents that describe, summarize, set forth, detail, or relate to any quality assurance or control that was conducted of the Cameron wellhead and Frac Stack at the ATGAS 2H Well, or state that no such quality assurance or control was conducted.

RESPONSE: Objection. Cameron objects to this request because it cannot determine the breadth of request and what is intended by "quality assurance or control." Each component goes through inspection and quality assurance steps throughout its manufacture. Requiring Cameron to search multiple facilities in multiple states to identify and produce any document related to a step in the manufacturing process that arguably qualifies as "quality assurance" is unduly burdensome. Cameron objects that this request is overly broad, unduly burdensome, and seeks the production of documents that are neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Cameron will produce the final assembly testing and field testing that occurred on the components used in the well head and frac stack at the Atgas 2H well. Cameron will also produce the routers for the final assembly of the valves used in the wellhead and frac stack.

REQUEST FOR PRODUCTION NO. 9: Produce copies of any and all manuals, policies, and other guidelines describing or otherwise relevant to the manufacture, testing, delivery, installation, or quality assurance/control of the Cameron wellhead and Frac Stack or similar equipment.

RESPONSE: Objection. Cameron objects to this request because it is overly broad. The request is not limited to any particular stage of the "manufacture, testing, delivery, installation, or quality assurance/control" processes involved in the manufacture of each part and piece of the valve assemblies that ultimately create the well head and/or frac stack. As such the request seeks documents for multiple parts and components, across multiple facilities in multiple states. The request is overly broad, unduly burdensome, and seeks

documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Cameron also objects that this request is not limited to the parts and equipment at issue, but instead seeks all documents relating to "similar equipment." This renders the request overly broad, unduly burdensome, and vague. It also causes the request to demand production of documents that are not relevant, nor reasonably calculated to lead to the discovery of admissible evidence.

Cameron objects to the instructions in this request to produce all documents "relevant to" the manufacture, testing, delivery, installation, or quality assurance of the Cameron wellhead. This request does not seek the production of a specific document, or category of documents, but instead uses a global, broad, undefined, and vague request to require Cameron to subjectively determine which documents to produce in response to this already broad inquiry. As such, this request is overly broad, unduly burdensome, and vague.

Subject to and without waiving these requests [sic], Cameron will produce the routers, running procedures, and field service reports related to the equipment installed at the Atgas 2H Well.

INTERROGATORY NO. 10: State whether any policies, practices, or procedures with respect to the installation or manufacture of the Cameron wellhead and Frac Stack or similar equipment have changed since the accident, and, if so, identify the changes and the reasons for such changes.

ANSWER: The running procedure for assembly and installation of wellheads in the configuration specified by Chesapeake remains the same.

Chesapeake asserts that the limited materials produced by Cameron in response to these requests do not detail the manufacture of the wellhead and Frac Stack and their components in any meaningful way. Chesapeake contends that it is entitled to information regarding Cameron's manufacturing process, including manuals, guidelines, and policies, so that it can determine the cause of the failure of Cameron's wellhead and Frac Stack. Chesapeake also contends that it is entitled to discover non-privileged internal Cameron emails, for example, that may discuss the manufacture and testing of the defective wellhead and Frac Stack. Chesapeake asserts that it is

entitled to discover if a manufacturing defect occurred at any point prior to the time that the product left Cameron's possession, including prior to "final assembly" of the product. Chesapeake, therefore, asserts that this Court should order Cameron to search for, review, and produce documents related to the manufacture of the wellhead and Frac Stack, including any manuals, policies, or other guidelines describing or otherwise relevant to the manufacture, testing, delivery, installation, or quality assurance/control of the Cameron wellhead and Frac Stack.

Cameron contends that instead of focusing on the products that broke, Chesapeake seeks discovery regarding components that did not fail and for which it possesses no complaints and broadly casts a net for any and every component of this wellhead. Further, Cameron states that it has produced the design, assembly, and production documents for every single component in the wellhead showing the complete build of each component and has included the production and assembly documents from its corporate affiliates in Romania and Mexico.

Having carefully reviewed the parties' submissions, the Court finds that Chesapeake's requests for production nos. 4, 8, and 9, as written, are overly broad and unduly burdensome. Specifically, while the discovery sought through these requests for production have some relevance to claims in this case, the Court finds the discovery is not proportional to the needs of the case. The wellhead and Frac Stack consist of numerous components, many of which are not at issue in this case. Cameron has produced to Chesapeake the design, assembly, and production documents for every component in the wellhead. Based upon those documents, Chesapeake must now narrow its requests for production nos. 4, 8, and 9 to only those components that Chesapeake claims were involved in the failure of the wellhead and Frac Stack. Once these requests for production are properly narrowed, Cameron is required to produce the documents requested as to these components,

9

including quality control/assurance for all stages of the manufacturing process. Finally, the Court finds that Cameron sufficiently answered interrogatory no. 10 and no further answer is required.

D. Similar Incidents

Chesapeake sought discovery regarding similar incidents with similar Cameron products through requests for production nos. 11 and 12 and interrogatories nos. 5, 11, and 13. The following are Chesapeake's requests/interrogatories and Cameron's responses/answers:

> REQUEST FOR PRODUCTION NO. 11: Produce any and all documents that list, mention, reference, identify, discuss, or otherwise relate to internal or external complaints regarding any make or model of the Cameron wellhead or Frac Stack.
>
> RESPONSE: Cameron objects to this request because it is not limited to the equipment at issue in this case, but instead seeks documents pertaining to "any make or model of the Cameron wellhead or Frac Stack." This renders the request overly broad, unduly burdensome, and vague. It also causes the request to demand production of documents that are not relevant, nor reasonably calculated to lead to the discovery of admissible evidence.
> Cameron objects to this request because it seeks any complaint, internal or external, concerning any piece of equipment. The request is not limited to the equipment at issue in the case, or complaints arising from the same or substantially similar use of the equipment – hydraulic fracturing in the Marcellus shale – as at issue in this case. The failure to limit the request to the circumstances in this case renders the case overly broad and unduly burdensome. Moreover, the request seeks documents that are unrelated to any issue in the case and thus seeks documents that are neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence.
> Cameron objects to the request because it is not limited to the flange between the tubing spool and lower master valve where Chesapeake lost control of the well. Chesapeake has not identified any defect or problem existing in any other piece of equipment at the well. As such, this request is overly broad, and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.
> Subject to and without waiving these objections, Cameron does not possess any responsive documents.

REQUEST FOR PRODUCTION NO. 12: Produce any and all documents that list, mention, reference, identify, discuss, or otherwise relate to leaks or failures of the Cameron wellhead or Frac Stack or similar equipment.

RESPONSE: Objection. Cameron incorporates its objection and response set forth in response to Request number 11.

INTERROGATORY NO. 5: Provide a summary of each complaint or incident from any source regarding failures and/or leaks of the Cameron equipment that was installed at the ATGAS 2H Well Site or similar equipment installed at any other location.

ANSWER: Objection. Cameron objects to this request to the extent that it seeks complaints and/or incidents for "similar equipment installed at any other location" under any conditions, at any time, throughout the world. First, Chesapeake has not identified any particular component of the wellhead or frac stack that possesses a defect, and has not sought to limit its request to the components that are at issue. During Pumpco's fracking operations, Chesapeake and Pumpco induced a leak at the flange between the tubing head spool and lower master valve. Chesapeake's failure to limit the request to the involved components exceeds a proper or reasonable scope of discovery.

Second, Chesapeake has not sought to limit its request to the same or similar circumstances as are involved in this case, and instead seeks information about any "failure" or any "leak" regardless of circumstances, facts, or cause, across all time, throughout the world, is patently over broad and unduly burdensome.

Third, Chesapeake does not limit the request to the same or similar geographic area, or even the same or similar operations, as were being conducted by Chesapeake in the Marcellus shale in Pennsylvania. The failure to limit the inquiry to similar types of wells, under similar types of conditions, under similar pressures, and undergoing similar activities, leads to an unreasonably broad and unduly burdensome request.

Fourth, Chesapeake does not limit the request to wellheads or frac stacks that were configured in the same way that Chesapeake specified that the Atgas 2H well (and all of its Marcellus shale wellheads) be configured. The mere fact that another wellhead possessed a similar lower master valve does not mean that the tubing head below it or valving about it will be the same as Chesapeake's. The request to identify every "failure or leak" by component rather than the same build and configuration of wellhead as involved in this

11

case causes this request to be overly broad. The permutations of the number of various wellheads with one or more of the similar components as possessed by Chesapeake, at locations throughout the world, over all time is too large for Cameron to project.

Finally, Chesapeake has not limited its request by any reasonable or relevant time frame, but instead seeks documents across all time.

For all of these reasons, Cameron objects that the request is overly broad, unduly burdensome, seeks information that is not relevant, and demands production of information that is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, none of the equipment installed at the Atgas 2H well had been involved in a prior complaint or incident involving a failure or leak. Cameron is not aware of any other complaint or incident involving a leak or failure between the tubing head spool and lower master valve during fracking in a wellhead and/or frac stack possessing the same configuration as that designed by Chesapeake.

INTERROGATORY NO. 11: Within the past five (5) years, has Defendant received or become aware of any failures and/or leaks of Cameron wellheads, including but not limited to seal failures between the tubing head and lower master valve? If so, state the date of the alleged failure or leak; the date the Defendant became aware of the alleged failure or leak; and the name and location of the alleged failure or leak.

ANSWER: Cameron incorporates its objection and response to Interrogatory No. 5.

INTERROGATORY NO. 13: Identify all lawsuits pending on, or filed since, January 1, 2009 in which Cameron has participated, either as a party or otherwise, that are related in any way to wellheads, frac stacks, hydraulic fracturing, or that contain allegations that Cameron was negligent, made negligent representations, or that Cameron's products were defective.

ANSWER: Cameron objects to this request because it is not limited to lawsuits containing the same or similar facts as alleged in this case. Instead, this interrogatory seeks information about any lawsuit where Cameron "participated" regardless of whether Cameron was formally involved in the lawsuit as a claimant or defendant. Moreover, this request seeks any lawsuit involving any undefined, apparently nominal, relationship to (A) a wellhead of any type, size,

> manufacture, configuration, or location; (B) hydraulic fracturing of any type - onshore or offshore - in any country, on any continent, under any conditions, using any type of equipment; (C) or mere allegations of negligence of Cameron arising under any set of facts or circumstances, including any type of lawsuit under the sun, whether or not it involved a product designed by Cameron. Cameron objects to this request because it is not limited in scope to any relevant set of facts, is not limited in scope to any relevant set of products, is not limited in scope to any relevant set of operations occurring at the well at the time of Chesapeake's loss of control, and is not limited in scope to any relevant geographic area. Cameron objects that this request is overly broad, unduly burdensome in the search required to satisfy the request, and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Chesapeake asserts that Cameron has improperly refused to respond to Chesapeake's discovery requests regarding similar incidents with similar Cameron products. Chesapeake contends that it is entitled to discovery of other occurrences in which other Cameron products have experienced leaks or failures because such prior occurrences may evidence a pattern or practice of manufacturing defects or negligence.

Having carefully reviewed the parties' submissions, the Court finds that Chesapeake's requests for production nos. 11 and 12 and interrogatories nos. 5, 11, and 13, as written, are overly broad and Cameron should not be compelled to provide any additional responses to these discovery requests. Specifically, the Court finds that Chesapeake's discovery requests are not appropriately limited in scope to substantially similar components, wellheads and frac stacks, and/or failures, etc. The Court finds Chesapeake has not shown that the information sought through these discovery requests are limited to other accidents/incidents with circumstances surrounding them that are similar enough that discovery concerning those incidents/accidents is reasonably calculated to lead to the uncovering of substantially similar occurrences. While the discovery requests need not be

13

limited to only the exact make, model, and configuration present at the ATGAS 2H Well, they should be limited to the specific products at issue, as well as products of the same design and configuration, and involving substantially similar incidents/accidents.

E. Interrogatories Nos. 1 and 3

Finally, Chesapeake asserts that Cameron has provided incomplete responses to Interrogatories Nos. 1 and 3, which seek the identification of the relevant personnel who were involved in the issues present in this litigation and to describe the testing that was performed on the defective wellhead and Frac Stack. The following are Chesapeake's interrogatories and Cameron's answers:

> INTERROGATORY NO. 1: Identify all persons, along with their title, information sufficient to ascertain their role, address, and telephone number, that were involved in the manufacture, assembly, testing delivery, installation, and/or quality assurance or control of the Cameron wellhead and Frac Stack that was installed at the ATGAS 2H Well.
>
> ANSWER: Objection. Cameron objects to this request because it is overly broad in that it is not limited to a specific component of the wellhead and/or frac stack that is alleged to have possessed any defect. Chesapeake lost control of the well when its hydraulic fracturing contractor, Pumpco, separated a flange between the tubing head spool and lower master valve. Chesapeake's failure to limit the request to the involved components exceeds a reasonable scope of discovery. For this reason, Cameron also objects to this request because it seeks information about parts and components that are not alleged to possess any defect, and therefore the request seeks information that that is not relevant, and also is not reasonably calculated to lead to the discovery of admissible evidence.
>     Subject to and without waiving these objections, Cameron will produce the routers, pressure testing documents, and field service reports identifying the persons involved in the final assembly of the wellhead and/or frac stack valve assemblies, the testing of the component assemblies in the shop and field, and the delivery and installation of the valve assemblies at the well.

INTERROGATORY NO. 3: Describe all testing that was performed on the Cameron Wellhead and Frac Stack and its Component Parts that was installed at the ATGAS 2H Well, both pre- and post-incident, including but not limited to the names and addresses of all persons or entities involved in such; the names and addresses of the facilities where such testing was conducted; a description of each test; the date of each test; and the results of each test. If no testing was performed, please so state.

ANSWER: Cameron incorporates its objection and response to Interrogatory No. 1. The parts that comprise each valve assembly go through multiple manufacturing processes that are inspected and tested. To the extent that this request seeks information about any and every step in the manufacturing and distribution chain for every individual component from forging to installation in the field, this request is overly broad and unduly burdensome. This request also seeks information about valve assemblies that do not have any alleged defect or role in the incident. As such, this request is overly broad, seeks information that is not relevant, and the request is not reasonably calculated to lead to the discovery of admissible evidence.
 Subject to and without waiving its objections, the testing of the valve assemblies in the shop, and in the field at the time of installation, will be produced. Post-incident testing was conducted at Stress Engineering under the direction and supervision of Chesapeake, Pumpco, and Cameron. Chesapeake actively participated in that inspection and testing process, and has all of the information generated in that process. Additionally, Element Materials Technology conducted testing of ring gaskets under various conditions. That testing was discussed with and shared with Chesapeake previously, but Cameron will produce the test reports generated by the testing.

Chesapeake asserts that although Cameron references certain documents in its answer to interrogatories nos. 1 and 3, those documents do not answer the questions. Specifically, Chesapeake asserts that those documents do not adequately identify persons responsible for testing or the locations where testing occurred and do not identify the persons associated with the manufacture, assembly, or pressure tests of the wellhead or Frac Stack. Finally, Chesapeake states that several of the documents that were produced are in a foreign language. In its response, Cameron states that

it will supplement its response to interrogatory no. 1 and list the persons involved in the wellhead assembly, delivery, and installation. With respect to interrogatory no. 3, Cameron asserts that it has fully responded to this interrogatory.

Having carefully reviewed the parties' submissions, the Court finds that as written, these interrogatories are over broad. However, once Chesapeake has determined those components that it claims were involved in the failure of the wellhead and Frac Stack, Cameron is required to supplement its answers to these interrogatories with respect to the specific components at issue. Further, with respect to post-incident testing, the Court finds that Cameron has sufficiently answered interrogatory no. 3.

III. Conclusion

Accordingly, the Court GRANTS IN PART and DENIES IN PART Chesapeake's Motion to Compel Production of Documents and Interrogatory Responses [docket no. 46] as set forth above. Cameron shall produce the supplemental discovery responses in relation to requests for production nos. 3, 6, and 7 within twenty (20) days of the date of this Order and shall produce the supplemental discovery responses in relation to requests for production nos. 4, 8, and 9 and interrogatories nos. 1 and 3 within twenty (20) days of the date that Chesapeake advises Cameron of the components that Chesapeake claims were involved in the failure of the wellhead and Frac Stack.

**IT IS SO ORDERED this 26th day of April, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE